**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

WESTFIELD INSURANCE COMPANY
a/s/o ARCO ENTERPRISES, INC.,

                   Plaintiff,

    v.                                Civil Action No. 1:14-cv-00055-IMK
                                        (Judge Irene M. Keeley)

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC,

                   Defendant.

## DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GARY A. DERIAN

COMES NOW, Defendant, Bridgestone Americas Tire Operations, LLC ("Bridgestone") and hereby moves this Court to exclude the opinion testimony of Gary A. Derian ("Derian"), Plaintiff's disclosed expert[1], because his opinions and testimony fail to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.   In support of its motion, Bridgestone would respectfully show the Court as follows.

### I.      INTRODUCTION

This lawsuit arises from a single-vehicle truck accident which occurred on February 24, 2012 in the northbound lanes of I-79 near Morgantown, West Virginia.  Hubert Pfeifer, an Arco Enterprises, Inc. ("Arco") employee, was operating a 2009 Peterbilt Truck, when the left front tire became disabled, Mr. Pfeifer lost control of the truck, and an accident

---

[1] Plaintiff filed a certificate of service on October 20, 2014, for its Federal Rule of Civil Procedure 26(a)(2) disclosures. On that day, per Rule 26(a)(2)(B), Plaintiff served BATO, by email, with Derian's report, curriculum vitae, and list of prior trial and deposition testimony. Plaintiff did not, however, serve BATO its Rule 26(a)(2)(A) disclosure.

followed.  The left front tire has been identified as a Bridgestone M860 all-steel truck tire, size 315/80R22.5 built during the 27th week of 2008 at Bridgestone's Morrison, Tennessee plant.  Of note, the subject tire was a smaller size (and load carrying capacity) than the tire recommended by Peterbilt for a steer position. A photograph of the federally mandated placard identifies the recommended steer tires as size 425/65R22.5 at 100 psi:





Plaintiff's Amended Complaint offers only that "the tread on the tire is defective." *See* Plaintiff's Amended Complaint (Dkt. No. 8, ¶15) (attached as "Exhibit A") (hereinafter "Ex. A"). Plaintiff's alleged "expert," Derian, admits unequivocally that there is no defect in the tread of the tire. *See* Gary Derian's October 31, 2014 deposition, 109:4–7 (attached as "Exhibit B") (hereinafter, "Ex. B"). Despite the hazy allegations of the Complaint and Derian's admission that there is no defect in the tire tread, Plaintiff has offered Derian as an expert witness to opine that there is a localized adhesion defect between adjacent rubber components within the structure of this all steel truck tire which caused the tire to fail, and the tire failure caused the truck to crash.

Plaintiff, however, really wants this Court to re-write Federal Rule of Evidence 702 and *Daubert*. Under Plaintiff's version of the rules governing expert opinions, an unqualified person may offer material science and accident causation opinions based on a laundry list of "potential causes." According to Plaintiff, so long as those "potential causes" are within the control of a manufacturer, the witness has no obligation to employ reliable and relevant scientific principals and methods in establishing causation. The Court, acting as gatekeeper, should reject such an approach.

3

## II.   OPINIONS OF GARY DERIAN

Plaintiff hired Derian, an engineering consultant, to opine as to the cause of the left front tire disablement and to the cause of the accident.  Based on Derian's expert report, attached as "Exhibit C" (hereinafter "Ex. C"), and his October 31, 2014 deposition, Derian offered several opinions:

(1) The Bridgestone M860 tire is not defective in its design, *see* Ex. B. at 77:2–11;

(2) The Bridgestone M860 tire complied with the applicable Federal Motor Vehicle Safety Standards in affect in 2008, and passed Bridgestone's more stringent testing requirements, *id.* at 121:11–122:7;

(3) The Bridgestone M860 tire at issue has a rubber-to-rubber adhesion defect in one isolated location between the cushion gum strip (located under the first steel belt) and the steel carcass ply, but Derian cannot identify any specific cause for the defect, *id.* at 109:8–13; 111:2–7; and 120:6–11;

(4) It does not matter to Derian what caused the loss of adhesion because the potential causes are under Bridgestone's control, *id. at* 116:15–118:5;

(5) The only evidence of the isolated loss of adhesion is in the appearance of one of the two adjacent rubber surfaces (the cushion gum and all four steel belts and tread are missing above the area), *id. at* 118:6–121:10;

(6) The alleged adhesion defect caused the tire to fail after several years and about 60,000 miles of service, *id*. at 133:23–24;

(7) The tire disablement caused the truck to crash. *Id*. at 142:3–12.

For the reasons set forth below, Derian is not qualified to offer defect opinions about an alleged rubber-to-rubber adhesion defect based on a surface appearance, and his tire defect and accident causation opinions cannot satisfy *Daubert*.

4

### III.   *DAUBERT* STANDARD

Rules 702 and 703 of the Federal Rules of Evidence control the admissibility of expert testimony.  In 2002, Federal Rule of Evidence 702 was amended to codify the *Daubert* standards, as follows:

> If scientific, technical, or other specialized knowledge will ***assist the trier of fact to understand the evidence or to determine a fact in issue***, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied principles and methods reliably to the facts of the case.

*Fed. R. Evid.* 702 (emphasis added).

Per Rule 702, the trial court must assess the reliability and the relevance of the proffered expert testimony. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (citing *Daubert*, 509 U.S. at 588).  The trial court, acting as a "gatekeeper," is charged with "making certain that an expert employs in the courtroom the same intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 520 U.S. 137, 152 (1999); *Cooper*, 259, F.3d at 200. The Court must admit scientific, technical, or other specialized opinion *only* if it is relevant and reliable. *See Kumho Tire*, 526 U.S. at 141; *Daubert*, 509 U.S. at 589. "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper,* 259 F.3d at 199.

### 1.      Expert Qualifications

"[T]he objective of *Daubert* 's gatekeeping requirement is to 'make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 200 (quoting *Kumho*, 526 U.S. at 152).  While Rule 702 had the intent of liberalizing the introduction of relevant expert evidence, "courts must

recognize that due to the difficulty of evaluating this testimony, expert witnesses have the potential to be both powerful and quite misleading." *Id.* at 199 (internal quotations omitted).

Pursuant to Rule 702, "an expert must have specialized knowledge to assist [a trier of fact] in deciding particular issues in the case." *Belk, Inc. v. Meyer Corp.*, *U.S.*, 679 F.3d 146, 162 (4th Cir. 2012).  For example, district courts within the Fourth Circuit have held that a *chemist* may not proffer an opinion regarding defective *medical* implants, *see Giddings v. Bristol-Myers Squibb Co.*, 192 F. Supp. 2d 421, 425 (D.Md. 2002), and that a business and engineering school graduate is not sufficiently qualified to perform a complex economic analysis. *See Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F.Supp.2d 530, 537-38 (D. Md. 2002) ("He has never performed a relevant market analysis for antitrust purposes, and at the time he was retained as an expert in this case, he was entirely unaware of how an economist would perform such a study."). Thus, credentials in another field are not enough to qualify an expert; there must be a "fit" between the expert's special knowledge and the particular subject matter upon which he will testify.  *See Kumho Tire*, 526 U.S. at 152; *see also Berlyn, Inc.*, 214 F.Supp.2d at 538 ("The experience one has in a given trade, however extensive and however closely related to the 'business side' of that industry, does not render one presumptively qualified to define that industry's relevant markets.").

### 2.        Reliability of expert opinions

"A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be denied using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). The Supreme Court has provided a non-exclusive list of factors that should be considered

when the reliability of an expert's testimony is being analyzed for purposes of determining the admissibility of the proffered opinion(s):

(1)  the extent to which the expert's theory has been or can be tested;

(2)  the extent to which the expert's technique relied upon the subjective interpretation of the expert;

(3)  whether the expert's theory has been subjected to peer review or publication;

(4)  the expert's technique's potential rate of error;

(5)  whether the expert's underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

(6)  the non-judicial uses which have been made of the expert's theory or technique.

*Daubert,* 509 U.S. at 592–93; *see United States v. Dorsey*, 45 F.3d 809, 812 (4th Cir. 1995).

The proponent of expert testimony must establish its admissibility, including its reliability, by a preponderance of the evidence. *Cooper*, 259 F.3d at 199. If there is an analytical gap between the data and the opinion offered by the expert, the opinion is unreliable and inadmissible. *Gen. Elec. Co v. Joiner*, 522 U.S. 136, 147 (1997) ( "nothing in *Daubert* or the Federal Rules of Evidence require the district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The Federal Rules of Evidence clearly state that if the court determines that the underlying facts or data do not provide sufficient basis for the opinion offered by the expert, the expert's opinion is inadmissible.

In the context of tire defect cases, under *Daubert*, courts have not hesitated to exclude expert testimony concerning alleged tire defects where the expert testimony is not reliable. *See Kumho Tire Co.,* 526 U.S. at 158; *Smith v. Goodyear Tire & Rubber Co*., 495 F.3d

224 (5th Cir. 2007); *McCool v. Bridgestone/Bridgestone North American Tire, LLC,* 222 Fed.App'x 847 (11th Cir. 2007); *Allen v. LTV Steel Co.*, 68 Fed.App'x 718 (7th Cir. 2003); *Williams v. Michelin North America, Inc.* 381 F.Supp.2d 1351 (M.D.Fla. 2005);  *Hauck v. Michelin N. Am., Inc.,* 343 F.Supp.2d 976 (D.Colo. 2004); *Rivera-Pomales v. Bridgestone/Bridgestone, Inc.,* 217 F.R.D. 290 (D.P.R. 2003); *Prince v. Michelin N. Am., Inc.,* 248 F.Supp.2d 900 (W.D.Mo. 2003); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1355 (D.Ariz. 1996), *aff'd* 114 F.3d 851 (9th Cir. 1997); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex. 2006); *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex.App. 2004); *Mitchell v. Uniroyal Goodrich Tire Co.,* 666 So. 2d 727 (La. Ct. App. 1995); *Clement v. Griffin,* 634 So.2d 412 (La. Ct. App. 1994).

### 3.    Relevance of expert opinions

In *Daubert*, the Supreme Court stated that Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 589, 591.  Thus, to be admissible under *Daubert*, an expert's testimony must not only be reliable, but also must be relevant to a fact in issue, such as causation.  *See Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244–45 (5th Cir. 2002) (holding that orthopedist's testimony that synthetic joint fluid possibly caused infection in patient's knee was irrelevant, and thus not admissible; where witness admitted that he had no scientific evidence to support conclusion as to most likely source of infection). To the extent an expert witness lacks scientific evidence to support his or her conclusions, those conclusions will not be helpful to the fact-finder because of the expert's inability to conclude that it was more likely than not to be the cause of the injury/event.  As such, those conclusions will be irrelevant and should be excluded.

## IV.     ALL STEEL TRUCK TIRES

An all steel belted radial truck tire is a highly-engineered composite structure, typically containing twenty or more different components and a dozen or more different compounds. Each of these components is engineered to serve specific functions in the tire. The primary component areas of an all steel radial truck tire can be characterized in six regions.

The first is the inner liner, which is a unique rubber compound that acts as the tire's inner tube and assists in retaining the air in the tire. The second are the tire beads, which consist of steel wires and a unique rubber compound coating. The tire beads secure the tire to the rim once the tire has been inflated. The carcass or body ply comprises the third, and in an all steel construction the carcass ply is comprised of steel cords. The steel carcass ply gives the tire the strength and structure necessary to retain the high air pressure to carry the specified heavy loads. The fourth are the steel belts, which are a composite of steel cords and rubber compounds that provide additional strength, stiffness and stability under the tread area. In the subject tire, there are four (4) steel belts. Between and among the carcass ply and four steel belts are components such as belt edge gum strips, a belt wedge, and a belt edge insert (called a cushion gum strip by Derian). The fifth is the tread, which consists of specially formulated rubber compound and specially designed tread element geometry that provide wet and dry traction, tread wear, rolling resistance, and ride and handling characteristics. The sixth are the rubber sidewalls, which protect the internal structure against minor cuts and abrasions and provide aesthetic appearance to the tire. *See* Expert Report of Joseph L. Grant (Nov. 3, 2014)  (attached as "Exhibit D") (hereinafter "Ex. D").

A graphic illustration of an all steel truck tire appears on the following page.

9



First Steel Belt
Carcass Ply
Belt Edge Insert

## V.    ARGUMENT

### 1.    Derian is not qualified to offer an adhesion defect opinion.

Derian's only opinion regarding a defect suffered by the subject tire is this: that a rubber-to-rubber adhesion deficiency exists at the 6:00 location on the opposite serial side of the tire (if the tire is viewed like a clock face). Ex. B at 101:11-14; 107:6-11.  Derian further opines that this rubber-to-rubber adhesion deficiency only exists between the missing cushion gum strip (or belt edge insert) and the steel carcass ply. *Id.* at 109:8-13. The only evidence Derian cites to support his opinion of a rubber-to-rubber adhesion deficiency is the tear pattern (appearance) of the surface of the carcass ply. *Id.* at 118:19-119:1.

Derian properly concludes there is no design defect in the tire, especially since Derian has no all steel truck tire design experience. He has never designed an all steel truck tire or any component intended for use in an all steel truck tire *See* Ex. B at 147:7-9; *see also*

Deposition of Gary Derian, *Underwood v. Bridgestone*, 15:20–22 (attached as "Exhibit E") (hereinafter "Ex. E"). Derian never had any role in the development or evaluation of any rubber compound used in an all steel truck tire. Ex. E. at 40:2-13; 40:19-41:1. He has never conducted any adhesion testing on any all steel truck tire, including any adhesion testing for this case. *See* Ex. E at 41:13–16; *see also* Ex. B. at 81:2–4; 82:13–16.

Derian's only experience in tires came from his employment at BF Goodrich between 1974–1986.  Derian worked on non-tire products from 1974–1976, and Derian held a marketing position at the company from 1982–1986. *See* Ex. B. at 146:17–25; *see also* Curriculum Vitae of Gary P. Derian (attached as "Exhibit F") (hereinafter "Ex. F").  Between 1976–1982, Derian was in a passenger tire design role, primarily assisting in the design of a high speed passenger tire, but he never designed an all steel truck tire. *See* Ex. B. at 147:1–9. The tire Derian focused on did not have a steel carcass ply and/or four steel belts. BF Goodrich had a group that focused specifically on truck tires and Derian was never part of that group. Moreover, BF Goodrich, like most tire companies, had a special group of materials scientists, like polymer chemists, who were responsible for designing, developing, and implementing the various rubber compounds in a tire. *See* Deposition of Gary Derian, *Price v. Bridgestone*, *et al.*, 27:3–28:16 (attached as "Exhibit G") (hereinafter "Ex. G"). Those persons are called compounders at tire companies and Derian was never a compounder, nor does he hold himself out as an expert in polymer chemistry. *Id.* at 26:22–28:16. Since leaving BF Goodrich nearly 30 years ago, Derian has never been hired by a tire company to design, manufacture, or analyze a tire. *See* Ex. B. at 149:3–17.

Derian's sole opinion is a manufacturing defect theory based on a visual inspection of a surface of rubber in a failed tire that went through an accident. Derian has never

built an all steel truck tire *Id.* at 148:2–4. He has not held a job where he was responsible for truck tire manufacturing, he was never assigned to a truck tire plant, and he was never even in the BF Goodrich truck tire plant. *Id.* at 147:24–148:1; 148:5–149:2. Derian was never responsible for any quality assurance of all steel truck tires and he never created any of the manufacturing process documents relating to truck tire manufacturing. *Id.* at 149:3–21; *see also* Ex. E at 16:1–14.

Derian used his eyes, hands, and a magnifying glass (like a jeweler's loop) to inspect the torn rubber surface and render his one defect opinion. He did not use a microscope; he performed no x-rays, no shearography, no holography, no scanning electron microscopy, and no EDX analysis. Ex. B. at 83:3–16 (transcription errors on transcript).  But, Derian provided five "writings" as the technical or peer reviewed support for his opinion.[2] While the five writings will be addressed in the reliability and relevance sections of the brief, one writing particularly addresses qualifications. In "The Failure Analyst and Rubber Product Surfaces," Ronald Smith sets forth the necessary qualifications for someone to "examine a failed product and, with complete certainty, develop a failure history that precisely describes the sequential event . . . ." Ronald Smith, *The Failure Analyst and Rubber Product Surfaces*, ACS Rubber Division (1986). According to Smith, in order to answer the question, "Why did this product fail?", the "FAILURE ANALYST" (Smith's capitalization) is "a microscopy specialist" who "must also be a materials scientist, detective, and diplomat." *Id.* at 4.

---

[2] The five "writings" Derian relies upon are: "Rubber to Rubber Bonding" by R. Joseph; "Molecular Aspects of Tack, by R.P. Wool; "Microscopy of Catastrophic Tire Failures" by Ronald W. Smith; "Clues to Failure Mechanisms" by R.S. Kaduuce; and "The Failure Analyst and Rubber Product Surfaces" by R. W. Smith. "An Analysis of Bead Compression Grooves" by Dennis Carlson is an unrelated presentation that Derian also provided. Derian reviewed all of Bridgestone Americas Tire Operations, LLC's confidential and non-confidential material in this case, but he relies on none of it. Ex. B. at 97:17–98:15.

Derian has no expertise as a microscopy specialist and he readily concedes he is not a materials scientist. His resume mentions nothing about detective or diplomat. The law is clear that an expert's expertise must "fit" the issue being presented to the Court or the expert should not be permitted to testify. *See Kumho Tire*, 526 U.S. at 152. The issue here is the microscopic tear pattern of a failed rubber surface—a materials science issue related to rubber to rubber bonding—and Derian has no qualifications or experience to address microscopy issues and material science issues related to such tear patterns and the way such appearance can be scientifically categorized as defective or not (putting aside causation altogether).

### 2.    Derian's tire defect theory is not reliable.

The methodology Derian employs to create a tire defect opinion fails under *Daubert* and its progeny. Derian opines that he employs the scientific method in his work. *See* Ex. E. at 11:20–22. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert*, 509 U.S. at 593.  Here, Derian ruled out what he argues are potential causes of a tire disablement (road hazard impact, overdeflected operation, etc.), and then relies on the appearance of rubber as the only evidence of defect. Ex. B. at 69:2–19; 118:6– 119:1; 122:13–123:12. But, Derian performed no testing whatsoever in this case or at any other time to equate, scientifically, the tear pattern with a cause of the tear pattern. *Id.* at 82:13–85:8. When asked what was the cause of that torn appearance of tire, Derian conceded he has no opinion based upon a reasonable degree of engineering certainty. *Id*. at 111:2–7. He states that there are "potential causes" like contamination, use of solvent, or an age problem, but "I don't know." *Id.* at 110:9–111:1. When pressed on whether he has proof of these potential causes, Derian admits no such evidence exists of contamination, use of solvent or an age problem. *Id.* at

13

114:5–10; 116:1–11. When asked which component part (carcass ply or cushion gum strip) was improperly manufactured, Derian again has no opinion. *Id.* at 117:21–118:5. In other words, Derian has no opinion as to which component possesses the defect or what caused the alleged condition.

In *Kumho Tire*, the issue was the cause of a tire failure. Although the expert was allegedly qualified to offer opinions on the cause of the tire failure, his opinions were nevertheless excluded because, despite his qualifications, the Court found his methodology to be unreliable. *Kumho Tire,* 526 U.S. at 152. The Court noted that the district court found that "'none' of the *Daubert* factors, including that of 'general acceptance' in the relevant expert community, indicated that [the expert's] testimony was reliable." *Id.* at 156. The Court determined that because his methodology was flawed, the expert could not reliably determine the cause of the failure of the tire in question and thus, it was not error to exclude his testimony. *Id.* at 156–158.

The only materials from any scientific community that Derian relies upon to support his opinion that the tear pattern in the carcass ply rubber demonstrates a defective condition of the rubber are the five writings previously mentioned. Derian concedes, however, that no peer reviewed literature states that a tear pattern as appears in the subject tire is indicative of a defect. Ex. B. at 123:22–124:5. Derian admits that peer reviewed papers do state that tearing or cracking through an interface of two components is not proof of a defect, but he considers such work unscientific. *Id.* at 128:6–21. Derian has even relied on a text called *The Pneumatic Tire*, which specifically addresses fracture and crack propagation between adjacent rubber components, and there is no mention of a defect simply because a crack passes through an interface. *Id.* at 130:18–131:15; A.N. Gent and J.D. Walter, *The Pneumatic Tire,* 613–40 (Aug.

14

2005). Moreover, even though Derian only provided a list of the five writings at his deposition and never produced the selected papers, a review of them shows his flawed methodology.

In "Rubber to Rubber Bonding" by R. Joseph, the author states that "rubber surfaces experience varying degrees of adhesion when brought into contact." R. Joseph, *Handbook of Rubber Bonding* 150 (2001). No two surfaces are identical, and there exists at least four theories of adhesion—diffusion theory, mechanical theory, absorption theory, and electrostatic theory. *Id*. at 148–150. Thus, there are a "wide variety of variables affecting rubber to rubber bonding, such as the chemical composition of the rubbers, their compatibility/incompatibility, their molecular weights and their distributions, additives, crystalline and amorphous contents, surface nature and chemistry, crosslink densities, etc." *Id*. at 137. Mr. Joseph never mentions that a methodology of staring at a piece of rubber with eyes and perhaps a jeweler's loop allows a person to claim there is an adhesion defect.

In "The Microscopy of Catastrophic Tire Failures," Ronald Smith studied tire fragments and tires collected from the side of the highway to try and "read" the fracture surfaces using microscopy. Ronald Smith, *The Microscopy of Catastrophic Tire Failure*, ACS Rubber Division Meeting, Paper 71, 283–93 (1996). Mr. Smith even looks at interfaces between components (as opposed to tear patterns within a component), but Mr. Smith never states that a particular appearance of a tear pattern equates to a defective component or a defective manufacturing process. His work (with actual microscopes) revealed that most tires failed by a peeling separation between components, such as occurred in the subject tire. *Id.* at 292.

In "The Failure Analyst and Rubber Product Surfaces," *see supra*, Ronald Smith laid out the necessary qualifications for a microscopist to address why a product failed, and

Derian is no such expert. Regardless, Mr. Smith states that it is "essential" that a microscopist understand the difference between a normal and abnormal product appearance. *Id*. at 4. "The microscopist-analyst depends upon visual and pictographic information developed from his own library of micrographs augmented by micrographs published in technical literature." *Id.* Thus, if microscopy is the methodology being employed by Derian, his methodology failed because he provided no such "library" of micrographs, nor did he augment them with published literature of micrographs indicating poor rubber-to-rubber adhesion in an all steel truck tire.

Derian also relied on "Clues to Failure Mechanisms" by R.J. Kadunce, but that paper gives no clue that an appearance of a rubber surface as exists in the subject tire indicates a defect. R.J. Kadunce, *Clues to Failure Mechanics*, ACS Rubber Division, Paper 103, 1–14 (1986). Finally, in the "Molecular Aspects of Tack," R. P. Wool considers the issue of "stronger development at a polymer-polymer interface in terms of the dynamics and statistics of random – coil chains." R.P. Wool , *Molecular Aspects of Tack*, ACS Rubber Division, 307–319 (1984). As Mr. Wool states, the paper applies mathematical formulas "of uncured linear elastomers." *Id.* at 307. Since the subject tire is cured, and there is no reference or photo to an allegedly defective rubber surface, the paper does not support Derian's opinion.

In *Cooper Tire v. Mendez*, the Supreme Court of Texas, applying *Daubert,* struck a plaintiff's tire failure expert's tire defect opinions because the expert failed to conduct any scientific testing, could not cite any peer-reviewed studies or scientific community as support for his opinions, and offered no proof outside the world of litigation to support his theories. *Cooper Tire v. Mendez*, 204 S.W.3d 797 (Tex. 2006). Here, Derian conducted no scientific testing, his reference to peer reviewed papers is misplaced to the facts of this case, and he has no proof outside of litigation to support his material science opinion.

In *Goodyear Tire & Rios*, another Texas *Daubert* case involving allegations of tire manufacturing and design defect, the court excluded the testimony of an alleged tire failure analyst who concluded that the tire failed due to a manufacturing defect. *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex.App. 2004). The Court found that the expert's opinion was unreliable because he did not conduct any tests on the tire to rule out other possible causes of the failure, had not seen the specifications for the tire, had not shown that his methodology was generally accepted by other experts in the field, and had not relied on any peer-reviewed literature containing information about tire failures. *Rios*, 143 S.W.3d at 115. Like the expert in *Rios*, Derian did not perform any testing, he did not rely on any Bridgestone documents, he has not shown his methodology is generally accepted in the tire scientific community, and he cannot cite to any relevant peer-reviewed scientific literature in support of his "causation" analysis in this case.

In addition to the absence of any testing, the absence of any peer review publications to support his theory, and the absence of any support for his theory by the relevant scientific community, it is apparent that Derian's technique of "reading" the tear pattern is purely subjective. What is the rate of error for such subjective technique when none of the cited "writings" identify the particular tear pattern as being caused by any defect? None of the suggested reliability factors under *Daubert* or *Kumho Tire* can be met by Plaintiff.

### C.    Derian's tire defect opinion is not relevant.

Derian's opinion asks the trier of fact to believe that the appearance of a piece of rubber means the rubber must be defective. Derian, allegedly acting as a scientist, performed no testing, possesses no testing results, has no scientific literature, has no library of micrographs himself or from the cited literature, and cannot identify any cause of the alleged defect. Rather,

17

his opinion boils down to this: the tire must be defective because Bridgestone runs the plant. This opinion is not based in scientific methodology, and it is therefore irrelevant. Moreover, the lack of any evidence to support his potential defect causes also makes his opinions irrelevant. Derian cannot assist the trier of fact in determining the cause of the tire disablement by holding up a picture and guessing that the appearance is indicative of a defect.

### D.     Derian's accident causation opinion is not reliable or relevant.

Derian readily admits that just because a tire fails does not mean a crash inevitably follows. *See* Ex. B. at 142:22–143:2. He knows that the federal government and other groups have analyzed crashes where a tire issue may have been involved, and the percentage of accidents following tire events is very, very small. *Id.* at 142:13–21; *see also* Ex. E. at 167:19–24. Derian provided no proof other than his say-so that if a tire is disabled, the driver often loses control of the vehicle. *See* Ex. B. at 142:3–8. Derian conducted no accident reconstruction. *Id.* at 143:7–10. Not surprisingly, he never visited the accident scene. *Id.* at 137:22–23. He provided no data or calculations on speed, driver steering inputs, or braking, and he provided no data or scientific support related to the effect of a disabled tire on vehicle dynamics. *Id.* at 133:3–138:3; 138:14–20; 139:24–140:2. He concedes he did not perform a scientific vehicle dynamics analysis. *Id.* at 143:3–6. In short, the sole basis of Derian's accident causation opinion is that, he, Derian, has "done dozens of these cases." *Id.* at 142:7–8. Derian's opinion on accident causation is classic *ipse dixit*, which should fail as a matter of law. *Joiner*, 522 U.S. at 147 ("nothing in *Daubert* or the Federal Rules of Evidence require the district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert").

## VI.    CONCLUSION

The duty of this Court is to act as a gatekeeper to prevent unqualified persons from offering unreliable and irrelevant expert testimony to a jury who may be easily persuaded. Derian offers no expertise in materials science and he offers no scientific methodology to support his tire defect or accident causation opinions. Accordingly, Derian's opinions are unreliable, irrelevant, and should be excluded by this Court.

WHEREFORE, Defendant Bridgestone Americas Tire Operations, LLC respectfully requests that this Court exclude the proffered opinions and testimony of Gary A. Derian. Bridgestone also requests all such other and further relief, either general or specific, at law or in equity to which it may show itself to be justly entitled.

Respectfully submitted this 25th day of November, 2014.

**Bridgestone Americas Tire
Operations, LLC**

By counsel

*/s/ Ronda L. Harvey*
Ronda L. Harvey (WVSB No. 6326)
Jessie F. Reckart (WVSB No. 12057)
BOWLES RICE LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25325-1386
Telephone:     (304) 347-1100
Facsimile:     (304) 347-1746
E-mail:   rharvey@bowlesrice.com

T. Christopher Trent (TXB No. 20209400)
(*pro hac vice*)
Johnson, Trent, West & Taylor
919 Milam Street, Suite 1700
Houston, Texas 7702
Telephone:     (713) 222-2323
Facsimile:     (713) 222-2226

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

WESTFIELD INSURANCE COMPANY
a/s/o ARCO ENTERPRISES, INC.,

        Plaintiffs,

    v.                            Civil Action No. 1:14-cv-00055-IMK
                                        (Judge Irene M. Keeley)

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC,

        Defendant.

## Certificate of Service

        The undersigned counsel for Defendant hereby certifies that she electronically filed the foregoing **Defendant's Motion To Exclude the Expert Testimony of Gary A. Derian**, using the CM/ECF system which will send notification of such filing to the following attorneys at the e-mail addresses on file with the Court:

| | |
|---|---|
| Charles R. Steele, Esquire | Damien Zillas, Esquire |
| Steele Law Offices | Stutman Law |
| 360 Lee Avenue | 500 Office Center Drive, Suite 301 |
| Clarksburg, West Virginia 26301 | Fort Washington, Pennsylvania 19034 |
| Telephone:  (304)624-4004 | Telephone: (215) 283-117 |
| Facsimile:    (304)624-9334 | Facsimile:  (215) 283-1188 |
| Email:  crs@steelelawoffice.com | Email: zillasd@StutmanLaw.com |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

                         */s/ Jessie F. Reckart*_____
                         Ronda L. Harvey (WVSB No. 6326)
                         Jessie F. Reckart (WVSB No. 12057)
                         BOWLES RICE LLP
                         600 Quarrier Street
                         Post Office Box 1386
                         Charleston, West Virginia 25325-1386
                         Telephone:    (304) 347-1100
                         Facsimile:     (304) 347-1746
                         E-mail:   rharvey@bowlesrice.com

6533444.1